United States District Court
Southern District of Texas
**ENTERED**
September 09, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Christopher L. Cato, | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 4:24-cv-05091 |
| v. | § | |
| Houston Community College System and Harris County Sheriff's Office, | § | |
| *Defendants*. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Multiple motions are pending in this discrimination suit. Defendant Houston City College ("HCC")[1] filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Dkt. 12. Three other motions followed, filed by Harris County ("the County"), Sheriff Ed Gonzalez, and Marilyn Burgess, none of whom are listed as defendants. Dkt. 13 (the County's motion); Dkt. 24 (Sheriff Gonzales's motion); Dkt. 25 (Burgess's motion). Plaintiff Christopher L. Cato, who is *pro se*, requested an extension to respond to HCC's and the County's motions, Dkt. 14, which response he submitted anyway, although styled as a "motion to deny" HCC's and the County's motions to dismiss, *see* Dkt. 19. Cato also filed

[1] Houston Community College changed its name to Houston City College. *See* Dkt. 47 at 1.

an analogous "motion to deny" Sheriff Gonzales's and Burgess's motions to dismiss. Dkt. 26. More recently, HCC and Harris County Sheriff's Office's ("the Sheriff's Office"; collectively with HCC, "Defendants") moved to dismiss this suit under Fed. R. Civ. P. 41(b), citing Cato's multiple failures to comply with this Court's discovery orders. *See* Dkt. 47. Because Cato failed to respond to Defendants' motion, it is deemed unopposed. *See* S.D. Tex. L.R. 7.4.

Given Cato's failures to comply with basic discovery obligations despite specific orders and warnings by this Court, the appropriate course is to grant the latest motion to dismiss for want of prosecution (Dkt. 47), dismiss Cato's claims with prejudice, and deny all other motions (Dkts. 12, 13, 14, 19, 24, 25, 26) as moot.

## **Background**

Cato claims that he was wrongly denied employment by the Sheriff's Office in July 2024. As best as can be discerned, Cato disputes the legitimacy of the reasons why he was not hired. For instance, Cato complains that the Sheriff's Office deemed him disqualified due to a 24-year-old criminal conviction despite purportedly telling Cato "they would only go back 10 years ...." Dkt. 8 at 4 (amended complaint). Cato also claimed that the Sheriff's Office "lied" by telling him he was not hired because he had a suspended license. *Id.* at 4. He accuses the Sheriff's Office of failing to make "the necessary corrections" after he provided copies of his records. *Id.*

Sometime later, Cato went to enroll at HCC and "was denied access" to its police academy based on the same 24-year old conviction. *Id.* at 4-5. Like his complaint about the Sheriff's Office, Cato maintains that the background check should only have gone back 10 years. *Id.* at 5.

Cato filed this suit on December 19, 2024, Dkt. 1, and later amended his complaint, Dkt. 8. He claims that Defendants' denials of employment or admission amounted to harassment and discrimination based on "age, race, religion and possible disability." Dkt. 8 at 7. He also asserts claims for negligence and gross negligence, *id.* at 8, contends that Defendants violated "his constitutional rights," *id.* at 12, accuses Defendants of "fraud by confession" under 18 U.S.C. § 1001 and "obstruction of" or tampering with evidence, *id.* at 13-14 (citing 18 U.S.C. § 1512 and 42 U.S.C. § 1985), and further invokes 42 U.S.C. § 1983.

HCC moved to dismiss the amended complaint. Dkts. 12. Although Harris County was not listed as a defendant, it too filed a motion to dismiss. Dkt. 13. Cato moved for an extension of time to respond. Dkt. 14. He then filed a "motion to deny" both motions to dismiss, which this Court construes as a response. Dkt. 19. HCC filed a reply. Dkt. 20.

Meanwhile, Cato had requested and executed service on Sheriff Ed Gonzalez and Marilyn Burgess, even though neither was named as a defendant in this case. *See* Dkts. 18, 22. Both of those individuals moved to dismiss,

Dkts. 24, 25, prompting Cato file another "motion to deny" relief that is, in substance, a response, Dkt. 26.

The Court issued a scheduling order, setting a discovery deadline of February 2, 2026. Dkt. 21 (entered June 13, 2025). Amidst the foregoing filings on various motions to dismiss, Cato filed a motion asking for a 120-day extension to "finish" his "ongoing investigation" because he needed more time to "subpoena and locate all of the witnesses for trial." Dkt. 27 at 1-2.

A month before discovery closed, Defendants filed a joint motion to compel Cato's deposition. Dkt. 29 (filed January 21, 2026). The motion noted that Cato had refused to provide his availability to sit for a deposition, despite multiple requests. *See id.* at 1-3. Because of that issue, the parties filed an unopposed motion to modify the scheduling order, Dkt. 32, which this Court granted, Dkt. 33. The amended scheduling order extended all deadlines by 90 days, making the new discovery cut off May 3, 2026. *See id.* The case was then transferred to another district judge, Dkt. 34, who referred it to the undersigned judge, Dkt. 36 (April 23, 2026 referral order).

A few days later, the parties submitted a joint letter requesting a conference to address Cato's failures to respond to discovery. Dkt. 37 (April 30, 2026 letter). As detailed in the letter, Cato had yet to agree to deposition dates, insisting that he would not do so until he finished investigating the case. *Id.* at 2. Although HCC noticed Cato's deposition for May 8, 2026, Cato had

not responded to the notice. *Id.* Likewise, Cato had failed to respond to Defendants' requests for written discovery, which were due on January 28, 2026 (for the Sheriff's Office's requests) and April 27, 2026 (for HCC's requests). *Id.* Defendants also complained that Cato had disregarded this Court's instruction, during the scheduling conference, to provide an email address that would facilitate communications with Defendants' counsel. *Id.*

On May 4, 2026, without convening a conference, this Court issued an order directing Cato to comply with his discovery obligations. *See* Dkt. 38. That included commanding Cato to sit for his deposition before May 27, 2026 and providing the missing written response to discovery requests by May 15, 2026. *See id.* at 4. The Court also directed Cato to provide Defendants' counsel with a valid email address at which he can be reached. *See id.* And the Court warned Cato, in bold, underlined text, that failure to comply with the directives "could have serious consequences, including dismissal of his claims." *Id.*

Due to Cato's discovery failures, this Court issued another amended scheduling order that adjusted the deadlines for motions, the joint pretrial order, and trial. Dkt. 39. But the Court cautioned that its May 4, 2026 order with explicit deadlines for Cato to rectify his non-compliance did not reopen the period for discovery, which had expired on May 3, 2026. *See* Dkt. 38 at 4. Copies of the discovery dispute letter and the Court's orders were sent to Cato by Federal Express. *See* Dkt. 40.

On May 20, 2026, Cato filed a letter—unilaterally—requesting another discovery conference. Dkt. 41. The letter attributed his delayed deposition to issues with his mother's health and her eventual death, claimed that Cato should not have to sit for a deposition while he "investigates" Defendants, and requested another extension of the deadline to complete his deposition. *See id.* at 1-2. Despite noting that the letter failed to comply with procedures requiring that discovery issues be raised via joint submission, this Court opted to deny the relief on the merits. *See* Dkt. 42. Reiterating its May 4, 2026 order, this Court emphasized that Cato's refusal to participate in discovery was "inexcusable" and "[n]o more delays or excuses will be permitted." *Id.* at 2. And once again, the Court warned Cato that "failure to comply with his discovery obligations and this Court's orders—including failing to sit for and complete his deposition by the specified deadline [of May 27, 2026] (Dkt. 38)—will result in sanctions that can include dismissal of his claims." *Id.*

Cato failed to sit for his deposition by the Court-ordered deadline. Instead, two days after the deadline expired, Cato filed yet another motion requesting a 90-day extension to do so, citing the death of his mother on April 20, 2026. *See* Dkt. 44 at 1-2 (filed May 29, 2026). The Court promptly denied the requested extension, citing its two prior warnings that the deadlines would not be extended. *See* Dkt. 45 at 1-2. And because Cato failed to sit for his deposition by the May 27, 2026 deadline, this Court ordered that Cato show

cause by June 8, 2026 why his case should not be dismissed for failing to comply with court orders. *Id.* at 2. That order, too, was sent to Cato via Federal Express. Dkt. 46.

The show cause deadline passed without a response from Cato. HCC and the Sheriff's Office then filed a motion requesting that Cato's claims be dismissed with prejudice under Fed. R. Civ. P. 37(b)(2)(A)(v) and 41(b) for failing to comply with discovery orders and prosecute the case. *See* Dkt. 47 (filed June 17, 2026). Cato did not respond to the motion. All pending motions are ripe for resolution.

## Analysis

Cato's failure to fulfill his discovery obligations and disregard of court orders make it unnecessary to reach the merits of his claims. As explained below, HCC and the Sheriff's Office (collectively, "Defendants") are entitled to dismissal of all claims, with prejudice, under Fed. R. Civ. P. 41(b).

### I. Standard for dismissals for want of prosecution

A federal court can dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules] or a court order …." Fed. R. Civ. P. 41(b). "Rule 41(b) dismissal with prejudice is 'a severe sanction' that requires (1) 'a clear record of delay or contumacious conduct by the plaintiff[;]' and (2) an express finding that 'lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser sanctions that

proved to be futile.'" *Ratcliff v. EKRE of TX, LLC*, 2025 WL 3657315, at *2 (S.D. Tex. Nov. 25, 2025) (quoting *Campbell v. Wilkinson*, 988 F.3d 798, 801-02 (5th Cir. 2021)), *adopted by* 2025 WL 3655196 (S.D. Tex. Dec. 17, 2025). The Fifth Circuit also generally requires "at least one of three aggravating factors: '(1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct.'" *Campbell*, 988 F.3d at 802 (quoting *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992)). "A single aggravating factor is sufficient to dismiss with prejudice." *Carrera v. Allstate Vehicle & Prop. Ins. Co.*, 2025 WL 4353976, at *2 (S.D. Tex. Dec. 22, 2025) (citing *Berry*, 975 F.2d at 1191), *adopted by* 2026 WL 501245 (S.D. Tex. Feb. 23, 2026).

## II. Cato's willful failures and non-compliance merits dismissal.

Defendants are correct that Cato's repeated failures to comply with this Court's orders commanding him to fulfill basic discovery obligations merits dismissal under Rule 41(b). *See* Dkt. 47. Defendants' request is also deemed unopposed because Cato did not respond. *See* S.D. Tex. L.R. 7.4. Regardless, the relevant factors favor dismissing Cato's claims with prejudice.

### A. Cato contumaciously refused to sit for his deposition.

The first and third aggravating factors are implicated here. Indeed, the record reflects a clear record of delay that was both intentional and attributable solely to Cato himself.

Cato repeatedly refused to cooperate in scheduling his own deposition, long before the Court ordered him to do so. In fact, Defendants' counsel began asking Cato for deposition dates well before the original February 2, 2026 discovery deadline had expired. *See* Dkt. 29 at 1-2. Yet Cato repeatedly strung counsel along, indicating he would provide those dates later. *See id.* at 2. Left without options, Defendants filed a motion to compel Cato to sit for a deposition February 2026. *See id.* at 3. And because the discovery deadline expired before they could obtain a ruling, Defendants were then forced to seek and obtain a 90 extension of the outstanding deadlines that pushed the discovery cut-off until May 3, 2026. *See* Dkt. 32 (unopposed motion for extension); Dkt. 33 (order granting). Yet Cato still refused to sit for a deposition even by that extended deadline, claiming that he would not do so while he was still investigating the case. *See* Dkt. 37 at 2. That, of course, cannot excuse a plaintiff from sitting for his *own deposition*.

Cato's obstruction of discovery led this Court to issue a May 4, 2026 directive that Cato must sit for his deposition by May 27, 2026. *See* Dkt. 38 at 4. The order stated bluntly that "Cato's refusal to sit for the deposition is totally unacceptable" and lacked any legitimate basis. *See id.* at 2. And this Court made crystal clear that failure to comply "could have serious consequences, including dismissal of [Cato's] claims." *Id.* at 4.

Instead of complying, however, Cato sought another extension, Dkt. 41 at 1-2—which this Court quickly denied, Dkt. 42 (May 22, 2026 order). In that second order, the Court repeated its findings that Cato had no valid excuse for refusing to participate in discovery, and that his conduct has "already caused significant delays." Dkt. 42 at 2. Again, this Court cautioned that "[n]o more delays or excuses will be permitted." *Id.* And again, this Court warned Cato that "failure to comply with his discovery obligations and this Court's orders—including failing to sit for and complete his deposition before the specified deadlines (Dkt. 38)—will result in sanctions that can include dismissal of his claims." *Id.*

Cato ignored the Court's multiple warnings. Instead, two days after the May 27, 2026 deposition deadline passed, he filed a motion requesting a 90-day extension for discovery. *See* Dkt. 44 at 1. The Court denied that request, citing its earlier warnings that the Court would not extend either the deposition deadline, specifically, nor the discovery deadline, generally. *See Dkt. 45.* at 1-2; *see also* Dkt. 38 (noting that the May 3, 2026 discovery deadline would not be extended). Moreover, because Cato missed the mandatory deposition deadline, this Court issued an order directing Cato to show cause, by June 8, 2026, why his case should not be dismissed. *Id.* at 2. He ignored the order, filing no response. That type of conduct reflects a "stubborn resistance to authority which justifies a dismissal with prejudice." *See Boudy*

*v. McComb Sch. Dist.*, 168 F.4th 257, 264 (5th Cir. 2026) (cleaned up) (quoting *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 327 (5th Cir. 2008)).

Cato bears sole responsibility for failing to comply with his discovery obligations, failing to heed this Court's warnings, and failing to follow this Court's directives. Those considerations strongly favor dismissing his claims with prejudice.

**B. Lesser sanctions have been futile.**

The foregoing history also reflects that lesser sanctions have not prompted Cato to participate in basic discovery and comply with this Court's directives. As Defendants observe, this Court attempted to bring Cato into compliance by issuing multiple warnings and denying Cato's requests for extension. *See* Dkt. 47 at 3; *see also, e.g.*, *Boudy*, 168 F.4th at 266 (noting that lesser sanctions can include explicit warnings). All that was for naught because Cato *still* failed to sit for his deposition by the hard deadline of May 27, 2026. And even after Cato missed that deadline, this Court gave Cato a final chance to explain why he had failed to comply. *See* Dkt. 44 at 2. He chose not to do so. Cato's disregard of repeated warnings is enough to justify dismissal with prejudice. *See, e,g.*, *Callip v. Harris Cnty. Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir. 1985) ("Providing plaintiff with a second or third chance following a procedural default is a 'lenient sanction,' which, when met

with further default, may justify imposition of the ultimate sanctions of dismissal with prejudice.”).

Notably, too, monetary sanctions are not a viable alternative. Because Cato is proceeding *in forma pauperis*, *see* Order to Proceed without Prepaying Fees or Costs, *Cato v. HCC*, 4:24-mc-02106 (S.D. Tex. Dec. 19, 2024), he lacks the funds to pay any fees. *See Lewis v. Sheriff's Dep't Bossier Parish*, 478 F. App'x 809, 818 (5th Cir. 2012) (per curiam) (affirming dismissal, including because the plaintiff's IFP status rendered “monetary sanctions ... fruitless”). There are simply no avenues left to redress Cato's conduct. And having failed to respond, Cato does not dispute Defendants' requested remedy. Under these circumstances, this Court should grant Defendants' motion to dismiss all claims with prejudice under Fed. R. Civ. P. 41(b). All other motions should be denied as moot.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendants Houston City College's and Harris County Sheriff's Office's motion to dismiss (Dkt. 47) be **GRANTED**, and that Plaintiff Christopher L. Cato's claims be **DISMISSED WITH PREJUDICE** under Fed. R. Civ. P. 41(b).

It is further **RECOMMENDED** that the other motions to dismiss filed by Houston City College (Dkt. 12), Harris County (Dkt. 13), Sheriff Ed Gonzalez (Dkt. 24), and Marilyn Burgess (Dkt. 25); Cato's motion for extension

(Dkt. 14); and Cato's motions (Dkts. 19, 26) to deny other parties' motions to dismiss his claims, all be **DENIED AS MOOT**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on September 9, 2026, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge